IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOREN MARK MCKINNON, JR., | No. C 12-0081 WHA (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY** |
| v. | |
| SUSAN HUBBARD, Warden, | |
| Respondent. / | |

## INTRODUCTION

Petitioner, a California prisoner, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. 2254, seeking relief from his conviction in state court. Respondent was ordered to show cause why the writ should not be granted based upon petitioner's claims that: (1) his conviction for attempted murder was supported by insufficient evidence; and (2) he received ineffective assistance of counsel at trial.[1] Respondent filed an answer with a supporting memorandum of points and authorities. Petitioner did not file a traverse. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

### I. PROCEDURAL BACKGROUND

On May 29, 2007, a Humboldt County Superior Court jury found petitioner guilty of attempted murder, assault with a firearm, two counts of second-degree burglary and being a

---

[1] Other unexhausted claims were struck from the petition (Docket No. 13).

felon in possession of a firearm. It was also found true that petitioner personally discharged a firearm in the commission of the attempted murder and that he personally used a firearm in the commission of the assault with a firearm. The trial court sentenced petitioner to a prison term of thirty-two years and eight months.

On May 1, 2009, the California Court of Appeal affirmed petitioner's conviction in an unpublished opinion (Exh. D). On July 15, 2009, the California Supreme Court denied review (Exh. F). On January 5, 2012, petitioner timely filed the instant petition for a federal writ of habeas corpus.

## II. FACTUAL BACKGROUND

On October 28, 2006, Bruce Taylor's white Toyota SUV was stolen while parked near the Klamath River. A clerk at a nearby store told Taylor that she had seen a similar white SUV at the store and that a man and woman had bought some supplies. The clerk described the man as having a cleft lip, tattoos around his neck and short hair.

About twenty minutes later, Taylor saw his missing vehicle parked near the Big Bar River with a person, or perhaps two inside. Taylor then heard a car alarm and saw that someone had broken a window and entered a Dodge truck in the same area. Taylor then flagged down a passing truck so the police could be called.

The truck that was flagged down belonged to Judge Harold Neville who was leaving the area with Lydia Biggs. Biggs stated that a man was by the river who had a harelip and tattoos on his neck. Judge Neville devised a plan to apprehend the individual and used his truck to block the only exit from the area while Taylor went to call the police. From their position, Judge Neville and Biggs could see a person breaking into parked trucks. Judge Neville was a former marine and highway patrol officer and retrieved a handgun from his truck. Judge Neville intended to arrest petitioner and ordered him away from the other vehicles.

Upon hearing Judge Neville, petitioner ran to the white SUV and retrieved a shotgun, pointed it at Judge Neville and fired three shots. The shots hit the vegetation near Judge Neville and debris struck his face. Judge Neville then took cover behind his truck. Biggs was still in the truck and ducked under the dashboard in fear for her life after hearing the shots or debris

hitting the truck. Biggs saw the shotgun and believed it was sawed off. As Judge Neville was seeking cover, he heard but did not see two additional shots fired from the direction of the white SUV, which sounded to him as if they may have from come from a high-caliber handgun. Biggs was unable to remember the additional shots.

Petitioner got into the white SUV and drove towards Judge Neville's truck swerving off the road to exit the area. Judge Neville fired a shot at the white SUV's tire, but missed. Police arrived at the scene a short time later and found three spent shotgun shells near where the white SUV had been parked and also observed that two other trucks nearby had broken windows and items were strewn about the ground.

On November 1, 2006, Taylor's white SUV was found abandoned and damaged. Police found one spent twelve-gauge shotgun shell in the SUV. On November 4, 2006, a police officer observed a speeding blue truck that matched the description of another recently stolen vehicle. The police officer followed it and found it abandoned with the door open, ignition on and petitioner hiding nearby.

Biggs identified petitioner in a photo lineup with 99 percent confidence as the person who had fired at them. Biggs also identified petitioner at trial. The store clerk identified petitioner in a photo lineup and at trial as the individual in the store who exited the white SUV. Judge Neville was shown a photo lineup with petitioner, but failed to identify him as the person from the incident.

At trial, the defense offered expert testimony regarding memory and perception and how it can result in false identification by witnesses. The defense also argued that based on the store clerk's identification, it would have been physically impossible for petitioner to have been the individual who later fired at Judge Neville.

**ANALYSIS**

**I.    Standard of Review**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

3

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Under 28 U.S.C. 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Ibid.*; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion from the state courts. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). The last reasoned state court decision on petitioner's claims was the decision by the California Court of Appeal on direct review (Exh. D).

**II.    ISSUES PRESENTED**

    **A.    INSUFFICIENT EVIDENCE**

Petitioner claims there was insufficient evidence to support his conviction for attempted murder.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). Nor does a federal habeas court in general question a jury's credibility determinations, which are entitled to near-total deference. *Jackson v. Virginia*, 443 U.S. 307, 326 (1979). If confronted by a record that supports conflicting inferences, a federal habeas court "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Ibid.* The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

4

essential elements of the crime beyond a reasonable doubt.'" *Payne*, 982 F.2d at 338 (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *See Jackson*, 443 U.S. at 324. The Supreme Court has recently emphasized that "*Jackson* claims face a high bar in federal habeas proceedings . . ." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam).

Under AEDPA, a federal habeas court applies the standards of *Jackson* with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of *Jackson* to the facts of the case. *Coleman*, 132 S. Ct. at 2062; *Juan H.*, 408 F.3d at 1275. To grant relief, a federal habeas court must conclude that "the state court's determination that a rational jury could have found that there was sufficient evidence of guilt, i.e., that each required element was proven beyond a reasonable doubt, was objectively unreasonable." *Boyer v. Belleque*, 659 F.3d 957, 965 (9th Cir. 2011).

After setting forth the relevant state law, the California Court of Appeal found there was sufficient evidence to support the conviction and rejected this claim.

> Applying these standards here, we find relevant the following. The record reflects that appellant, at the time in question, was engaged in multiple acts of vehicle theft and burglary near the Big Bar River access area. Judge Neville and other witnesses observed appellant in possession of stolen property and engaged in stealing other property, and thus attempted to prevent his escape while police were called. Judge Neville positioned his truck on the one-way road from the river access area to block appellant's exit. Judge Neville then left his truck and stood by the driver's side door, pointing a firearm at appellant and ordering him to stay away from the vehicle he was approaching. At that point, appellant, a felon who had served a prior prison term, retrieved a shotgun that appeared to Biggs to be sawed off, and fired three shots in Judge Neville's direction in quick succession. When firing, appellant was about 40 yards away from Judge Neville, standing on the right side of the stolen vehicle. While appellant missed Judge Neville, his apparent target, the bullets hit very close. Indeed, Judge Neville described hearing shot hit the front of his truck and the ground next to him, and feeling debris strike his face. In response, Judge Neville immediately took cover behind his truck. Biggs, the passenger in Judge Neville's truck, also heard shot or debris hitting the front of the truck and ducked under the dashboard in fear for her life.
>
> The jury found these facts sufficient to establish that appellant had the requisite intent to commit attempted murder. On appeal, however, appellant argues the requisite intent was not established by substantial evidence because "there was no evidence that shooting a shotgun from 40 yards away is a deadly act." In so arguing, appellant points to Judge Neville's testimony on cross-examination that

5

he did not believe he was in mortal danger when appellant fired the shotgun in his direction. Appellant also points to the fact that the prosecution failed to offer testimony from a firearms expert regarding whether it was possible to kill a person from 40 yards away with a shotgun (which Biggs believed may have been "sawed-off").

We reject appellant's argument. Under California law, the prosecution was not required to present expert testimony to prove beyond a reasonable doubt that appellant could have killed Judge Neville from 40 yards away with the shotgun. Rather, the issue of whether appellant possessed the requisite intent to kill when he fired the shotgun three times in Judge Neville's direction was for the jury to decide, after considering all the evidence, including circumstantial evidence. (*People v. Smith*, *supra*, 37 Cal.4th at p. 741 ["There is rarely direct evidence of a defendant's intent. Such intent must usually be derived from all the circumstances of the attempt, including the defendant's actions."].) "While reasonable minds may differ on the resolution of that issue, our sole function is to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citations.]" (*People v. Lashley*, *supra*, 1 Cal.App.4th at p. 946.)

As other California courts have held, "'[t]he act of firing toward a victim at a close, but not point blank, range "in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill. . . .' [Citations.]" (*People v. Smith*, supra, 37 Cal.4th at p. 741.) Moreover, this inference of intent to kill arises even where the shooter had no particular motive for shooting the victim, and where " 'the bullet misses its mark or fails to prove lethal. . . .' [Citations.]" (*People v. Smith*, *supra*, 37 Cal.4th at p. 742.) In fact, "even if the shooting was not premeditated, with the shooter merely perceiving the victim as 'a momentary obstacle or annoyance,' the shooter's purposeful 'use of a lethal weapon with lethal force' against the victim, if otherwise legally unexcused, will itself give rise to an inference of intent to kill. (*People v. Arias* [ (1996) ] 13 Cal.4th [92] ... 162.)" (*People v. Smith*, *supra*, 37 Cal.4th at p. 742. *See also People v. Lashley*, *supra*, 1 Cal.App.4th at p. 945 ["Contrary to the argument advanced on this appeal, the evidence need not show in every instance a firing at point-blank range before the trier of fact may conclude that the shooter unambiguously intended to kill."].)

This standard, we conclude, was met in this case. Appellant purposefully fired a shotgun three times in Judge Neville's direction, after Judge Neville attempted to block appellant's escape, ordered appellant away from the stolen white Toyota, and pointed a gun in appellant's direction. (*People v. Smith*, *supra*, 37 Cal.4th at ¶. 740-741 [jury may consider evidence of motive in considering whether a defendant harbored an intent to kill].) While appellant was 40 yards away at the time, the shot from the shotgun hit vegetation at Judge Neville's feet, causing debris to rise up and hit him in the face. True, appellant missed Judge Neville. However, we cannot conclude that the jury acted irrationally in nonetheless concluding that appellant used a lethal weapon with lethal force against Judge Neville, giving rise to an inference of intent to kill. (*People v. Arias*, *supra*, 13 Cal.4th at p. 162; *People v. Smith*, *supra*, 37 Cal.4th at ¶. 741-742; *People v. Lashley*, *supra*, 1 Cal.App.4th at p. 945 [poor marksmanship does not necessarily establish a less culpable state of mind].)

Exh. D at 7-9.

Under California law the following elements are required to convict a defendant of

6

attempted murder: (1) the defendant had the "specific intent to kill" the alleged victim; and (2) he committed "a direct but ineffectual act toward accomplishing the intended killing." *People v. McCloud*, 211 Cal. App. 4th 788, 796-97 (2012) (citing *People v. Smith*, 37 Cal. 4th 733, 739 (2005)). "The specific intent to kill needed for attempted murder . . . [can] be inferred from the defendant's acts and the circumstances surrounding the alleged attack." *Smith*, 37 Cal. 4th at 752 (citation omitted). Under California law, "'a person who intends to kill can be guilty of attempted murder even if the person has no specific target in mind.'" *People v. Amperano*, 199 Cal. App. 4th 336, 341 (2011) (citation omitted).

The California Court of Appeal's determination that the jury could have found sufficient evidence of guilt based on the evidence presented was not objectively unreasonable. The evidence demonstrated that petitioner retrieved a shotgun and fired three shots at Judge Neville, who was approximately forty yards away. The bullets hit the front of Judge Neville's truck near where he was standing and the ground next to him. Judge Neville felt debris strike his face. The evidence was sufficient to demonstrate a specific intent to kill and a direct act to support the conviction.

Petitioner's specific intent to kill could be inferred from him firing a shotgun three times at the victim, even if the victim was forty yards away. In this case the bullets struck quite close to the victim, with debris striking him in the face. The California Court of Appeal's opinion discussed the relevant state law and noted that an intent to kill could be found by firing at a close but not point blank range and through the use of a lethal weapon with lethal force. *Smith*, 37 Cal. 4th at 741-42. Petitioner presents no arguments in the petition regarding how the state court opinion was unreasonable. He merely concludes that there was no evidence to support the finding. His conclusory argument is insufficient to meet the high standard for a sufficiency of evidence of claim. This claim is denied.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner contends that counsel was ineffective for failing to object when the prosecutor misstated a fact in closing arguments.

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that

7

(1) counsel's performance was deficient, and, (2) that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Under the first *Strickland* prong, a habeas petitioner must show that defense counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms, *id.* at 687–88, "not whether it deviated from best practices or most common custom," *Harrington v. Richter*, 131 S.Ct. 770, 778 (2011) (citing *Strickland*, 466 U.S. at 689). "A court considering a claim of ineffective assistance must apply a 'strong presumption'"that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 787 (quoting *Strickland*, 466 U.S. at 689). As for the prejudice prong, a reasonable probability is a probability sufficient to undermine confidence in the outcome. *Ibid.* On habeas review, a state court's determination of no prejudice can be disturbed only if that determination was objectively unreasonable. *Woodford v. Visciotti*, 537 U.S. 19, 26-27 (2002).

At trial Judge Neville testified that he did not see a second weapon during the shooting, he only heard it (Reporter's Transcript ("RT") at 342-43). During closing argument the prosecutor mistakenly stated that Judge Neville observed petitioner firing a second weapon. The prosecutor stated:

> Following through before the defendant left the scene, Judge Neville also described the fact that he then saw the man get another weapon and fire that one, perhaps twice. Miss Biggs did not see it, and she said she didn't know if she would have heard it, because she was, as she described, down on the floorboard. And she has no other information about another weapon being fired.

RT at 756-57. This misstatement did not draw an objection from petitioner's trial counsel. After setting forth the legal standard and factual background, the California Court of Appeal found trial counsel was not ineffective for failing to object.

> Here, the appellate record contains no explanation for defense counsel's failure to object to the prosecutor's misstatement of fact regarding the possible firing of another weapon. At no time was defense counsel asked to explain his failure, nor did he offer an explanation for it, either directly or indirectly. As such, under the standards set forth above, we must reject appellant's claim of ineffective assistance of counsel on direct appeal " 'unless there simply could be no satisfactory explanation.' (*People v. Pope* (1979) 23 Cal.3d 412, 426.)" (*People*

8

> *v. Kipp*, *supra*, 18 Cal.4th at p. 367.)
>
> Having reviewed the record, we conclude that a plausible tactical explanation exists for defense counsel's failure to object to the prosecutor's misstatement of fact, and thus that appellant's ineffective assistance claim must fail.  In particular, appellant's defense at trial was that he had been misidentified as the perpetrator of the crimes.  As such, defense counsel may have reasonably concluded that, as a tactical matter, it was preferable not to call further attention to the shootings, but rather to focus on discrepancies in the evidence placing him at the scene of the crimes in the first place.  While appellant argues defense counsel should have done both-focused on his alibi and corrected the prosecutor's misstatement regarding Judge Neville's testimony-it is not our role on appeal to second guess an attorney's decision regarding matters of trial strategy.
>
> In any event, as we have already discussed, the prosecution made clear several times during trial that the theory underlying the attempted murder charge was appellant's repeated firing of the shotgun in Judge Neville's direction, not the firing of any other weapon.  In addition, the trial court twice instructed the jury that "[n]othing the attorneys say is evidence.  In their opening statements and closing argument, the attorneys will discuss the case, but their remarks are not evidence. . . . Only the witnesses' answers are evidence."  Given these circumstances, even if defense counsel's assistance was deficient in this regard, we doubt there was any resulting prejudice to appellant.  (*People v. Kipp*, *supra*, 18 Cal.4th at p. 368.)

Exh. D at 14-15.

Other than providing a conclusory statement that counsel was ineffective, petitioner has failed to provide any arguments in support nor has he addressed how the state court opinion was an unreasonable application of *Strickland*.  The state court found that trial counsel's actions were not deficient and after reviewing the record there was no indication that the failure to object was outside the wide range of reasonable professional assistance.  Assuming that counsel was deficient in failing to object, petitioner has still failed to demonstrate prejudice.  Petitioner's defense at trial was that he was not the assailant, not whether one or two guns were used.  There was substantial evidence that the shotgun was fired three times at the victim, and that alone was sufficient to support the conviction.[2]  Petitioner does not elaborate how this brief mention of the witness observing two guns would have undermined the charges or changed the outcome of the trial.

Prior to the prosecutor's brief misstatement of the evidence, the prosecutor emphasized

---

[2] Nor would the prosecutor's misstatement affect the prior sufficiency of the evidence claim.  The California Court of Appeal specifically addressed this issue finding sufficient evidence solely with respect to the shotgun (Exh. D at 10).

9

the use of the shotgun. The prosecutor stated:

> It is clear from Miss Bigg's testimony that the shot from the shotgun is pelting the truck, because she can hear it hitting. Even when she's crawled down by the floorboard, she can hear it. And she said she was literally scared for life.
>
> \*   \*   \*
>
> And what we have here is that defendant firing a shotgun three different times at Judge Neville, the vehicle.

RT at 755-56.

The jury instructions that involved a weapon, the instructions for attempted murder and assault with a firearm, only referenced the use of one firearm, a 12-gauge shotgun (Clerk's Transcript at 248-49). There was no reference to the other weapon. As noted by the state court, the jury was also instructed that the closing arguments of the attorneys were not evidence, only the answers of the witnesses. Petitioner has failed to demonstrate there was a reasonable probability that the result of the proceeding would have been different had trial counsel objected to this isolated mistake regarding seeing as opposed to hearing the second gun. For all these reasons this claim is denied.

## CONCLUSION

For the reasons described above, the petition for a writ of habeas corpus is **DENIED**. A certificate of appealability will not issue. *See* 28 U.S.C. 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: February  6 , 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE